UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | : |
| | : |
| STATE OF CONNECTICUT, | : |
| OFFICE OF ATTORNEY GENERAL, and | : |
| | : |
| COMMONWEALTH OF PENNSYLVANIA, | :  CIVIL ACTION NO.15-5777 |
| OFFICE OF ATTORNEY GENERAL, | : |
| | : |
| Plaintiffs | : |
| v. | : |
| | : |
| CLICK4SUPPORT, LLC, | : |
| a Connecticut limited liability company, et al | : |
| | : |
| Defendants | : |

**Defendants' Spanning Source, LLC, George Saab,
Chetan Bhikhubhai Patel and Niraj Patel
<u>Supplemental Memorandum of Law</u>**

A.  **There will be no evidence of a common enterprise or that the Pennsylvania group engaged in the activities the FTC has challenged as violating the Act**

The papers and declarations of Defendants George Saab ("GS"), Chetan Bhikhubhai Patel ("CP") and Niraj Patel ("NP") (known collectively as the "Pennsylvania group") establish that none of them operated out of a common office and treated Spanning Source, LLC ("SS") as an investment rather than a day-to-day business. That is because, as is relevant to this case, SS mainly sold the service of helping to establish credit card processing by a merchant bank for several Internet businesses in India, some of which were related, and others that were not.

The operators of Internet businesses in foreign countries have difficulty in opening accounts with merchant banks in the United States for a variety of reasons, including that the merchant banks require guarantees from credit worthy people, and a d/b/a or fictitious name form which must be filed with Pennsylvania or another state. This difficulty has nothing to do

1

with the quality of the products or services being offered for sale, or the integrity of the sales program online. Simply stated, the merchant banks want a known, proven client and will not take risks on start-ups or unknown businesses operating in India.

This need was brought to the attention of GS when he was approached by a business associate who lived in India. GS met this man in his status as an engineer employed by Hewlett Packard in Boston, Massachusetts, and he offered GS the opportunity to provide the service of connecting an Internet-bound business operating out of India that needed help in connecting with credit card processors in the United States. Attached as Exhibit "D" to Defendants' Motion is the email string that shows the birth of the business relationship between SS and the companies in India that needed merchant bank liaison services; and Exhibit "C" is the agreement that SS entered into with the business in India that essentially, with small modifications regarding the financial and structure matters, governed the relationship. These two exhibits are the root of SS's business involvement in the matters that the FTC has raised. The exhibits demonstrate both the utter separateness between the people and operations in India from SS, and that SS's role was essentially that of an independent facilitator of bank related services that had no involvement with the sales that resulted in the credit card charges SS's service would allow to be processed. SS did not have any interest in the ownership or operation of the entities operating out of India (which often had American holding companies), nor in the products or services that were sold. The merchant banks did their own due diligence, and indeed, as the evidence will show, often refused to accept credit cards from websites or companies that failed their due diligence test. Moreover, the Pennsylvania group members were complete novices, and their value was that they had built up personal reputations for integrity and having good credit histories. In a sense, they were like investors who guaranteed the risk the merchant banks were undertaking, and SS

treated its relationship as hands-off once it helped to establish the credit card and merchant bank relationship.

As foreshadowed by the Agreement attached as Exhibit "C" to the Motion of the Pennsylvania group, at all times, the Pennsylvania group was at arm's length with the parties in India, with a bright line demarcation that separated the marketing and operations of the web-based computer support business in India, and the processing in the United States by SS.[1]

In short, despite the allegations in the Complaint and moving papers of the Plaintiffs, there cannot be and will not be any valid finding that SS on the one hand, and on the other hand, the entities doing the marketing and performance of services in India, shared common ownership, profits, management, location or other elements. And there thus will be no valid evidence that when looking at SS and the entities operating in India, the Court will find "the structure, organization, and pattern of a business venture reveal a "common enterprise" or a "maze" of integrated business entities, …nor will there be a valid finding of a "common enterprise" which the courts have described as a businesses that "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Delaware Watch Co. v. FTC,* 332 F.2d 745, 746 (2d Cir. 1964) (citing *Art National Mfrs. Dist. Co. v. FTC,* 298 F.2d 476, 477 (2d Cir. 1962)); *FTC v. Neovi, Inc.,* 598 F.Supp.2d 1104, 1116 (S.D.Cal.2008) (citing *Sunshine Art Studios, Inc.*

---

[1] Over time, to guard against dissatisfied consumers objecting to credit card charges, SS insisted that it take over the handling of after-sale refunds; and it aggressively sought out such consumers by regularly visiting the web site of the Better Business Bureau to search for complaints, and then working with that organization to make sure all complaining consumers received no-questions-asked refunds. SS likewise did the same with regard to general consumer complaint websites, and established a procedure where all complaints sent in by email or by telephone went directly to it. This activity was done without participation by the business in India, and was an independent operation run by SS in the United States for the benefit of the customers and also to keep down the charge backs since excessive charge-backs strained relations with the merchant banks.

*v. FTC,* 481 F.2d 1171, 1175 (1st Cir.1973); *FTC v. J.K. Publs., Inc.,* 99 F.Supp.2d 1176, 1201–02 (C.D. Cal.2000); *FTC v. Wolf,* 1996 WL 812940, at *8, 1997–1 Trade Cas. ¶ 71, 713 (S.D.Fla. 1996)); *F.T.C. v. Washington Data Resources*, 856 F.Supp.2d 1247, 1271 (M.D. Fla. 2012). Indeed, the relationship between SS and the entities in India share no resemblance to the various companies described in the cases cited above.

B. **There will be no evidence of control by the individual members of the Pennsylvania group sufficient to saddle them with the alleged violations of the Act**

The individuals in the Pennsylvania group treated SS as an investment and their role in managing it as a moonlighting undertaking that did not require serious effort; and they had no involvement in the sales or marketing of the products that were offered by the websites. As noted, none were owners, officers or employees of the companies that offered the services, and they did not know, and were generally unknown by the people in India who interacted with visitors to the websites, or who called in to the phones in India with questions about their computers or software. Therefore, the individual members of the Pennsylvania group cannot be liable for the wrongdoing alleged by the FTC.

The case law teaches that individual liability for violations of the FTC Act arises where: (1) "the individual defendants participated directly in the wrongful practices or acts *or*... had authority to control the [corporate defendants], " *Federal Trade Comm'n v. Jordan Ashley,* No. 93-2257-CIV, 1994 WL 200775 (S.D. Fla. Apr. 5, 1994) and (2) "the individual defendants had some knowledge of the wrongful acts or practices." *Id.* In other words, if corporate liability is established, the FTC must show that the individual defendants participated directly in the

practices or acts or had authority to control them. *See F.T.C.* v. *Amy Travel Service, Inc.*, 875 F.2d 564, 573 (7th Cir. 1989) (citing cases).

Accordingly, given this high threshold, the asset freeze is particularly unjust and inappropriate when the harm to the individual members of the Pennsylvania group is weighed against the lack of a likelihood that they will be found to be individually responsible in this case.

/s/ Gary Green\
Gary Green, Esquire\
Larry M. Keller, Esquire\
Samantha Green, Esquire

**SIDKOFF, PINCUS & GREEN, P.C.**\
2700 Aramark Tower\
1101 Market Street\
Philadelphia, PA 19107\
lmk@sidkoffpincusgreen

Attorney for Defendants Spanning Source, LLC, George Saab, Chetan Bhikhubhai Patel and Niraj Patel

Dated: November 5, 2015

# CERTIFICATE OF SERVICE

I, Larry M. Keller, hereby certify that, on this 5th day of November 2015, a true and correct copy of the foregoing *Defendants' Spanning Source, LLC, George Saab, Chetan Bhikhubhai Patel and Niraj Patel Supplemental Memorandum of Law* was served upon the following counsel of record via email and U.S. mail:

Fil M. De Banate, Esq.
Christopher D. Panek, Esq.
Nicole J. Guinte, Esq.
Federal Trade Commission
1111 Superior Avenue East, Suite 200
Cleveland, Ohio 44114
fdebanate@ftc.gov
cpanek@ftc.gov
nguinto@ftc.gov
Attorneys for Plaintiff Federal Trade Commission

Patricia M. Hamill, Esquire
Conrad O'Brien PC
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
phamill@conradobrien.com
Receiver

Sandra G. Arenas, Assistant Attorney General
110 Sherman Street
Hartford, Connecticut 06105
Sandra.Arenas@ct.gov
Attorney for Plaintiff State of Connecticut

Nicole R. Ditomo,
Deputy Attorney General Bureau of Consumer Protection
15th Floor, Strawberry Square
Harrisburg, Pennsylvania 17120
nditomo@attorneygeneral.gov
Attorney for Plaintiff Commonwealth of Pennsylvania
Office of Attorney General

|  |  | <u>Larry M. Keller</u> |
|---|---|---|
|  |  | Larry M. Keller, Esquire |
|  |  | **SIDKOFF, PINCUS & GREEN, P.C.** |
|  |  | 2700 Aramark Tower |
|  |  | 1101 Market Street |
|  |  | Philadelphia, PA  19107 |
|  |  | lmk@sidkoffpincusgreen.com |
|  |  | Attorney for Defendants, |
|  |  | Spanning Source, LLC, George Saab, |
|  |  | Chetan Bhikhubhai Patel and Niraj Patel |
| DATED: | November 5, 2015 |  |