UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** : | |
| : | |
| **STATE OF CONNECTICUT,** : | |
| **OFFICE OF ATTORNEY GENERAL,** and : | |
| : | |
| **COMMONWEALTH OF PENNSYLVANIA,** : | CIVIL ACTION NO. 15-5777 |
| **OFFICE OF ATTORNEY GENERAL,** : | |
| : | |
| **Plaintiffs,** : | |
| v. : | |
| : | |
| **CLICK4SUPPORT, LLC,** : | |
| a Connecticut Limited Liability Company, *et al.* : | |
| : | |
| **Defendants.** : | |

## ORDER

AND NOW, on this ____ day of _____, 2016, upon consideration of Plaintiffs' Motion for Leave to File Amended Complaint for Permanent Injunction and Other Relief and the Opposition of Defendants Spanning Source, LLC, George Saab and Chetan Bhikhubhai Patel, it is hereby ORDERED that the said Motion is DENIED in part. It is further ORDERED that Plaintiffs' Motion to Amend the Complaint to add Count V(Credit Card Laundering) to the Complaint and any related allegations as to Defendants Spanning Source, LLC, George Saab and Chetan Bhikhubhai Patel, is hereby DENIED.

BY THE COURT:

_____
Stewart Dalzell, J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** :<br>:<br>**STATE OF CONNECTICUT,** :<br>**OFFICE OF ATTORNEY GENERAL,** and :<br>:<br>**COMMONWEALTH OF PENNSYLVANIA,** :<br>**OFFICE OF ATTORNEY GENERAL,** :<br>:<br>      **Plaintiffs,** :<br>   v. :<br>:<br>**CLICK4SUPPORT, LLC,** :<br>a Connecticut Limited Liability Company, *et al.* :<br>:<br>      **Defendants.** :<br>: | **CIVIL ACTION NO. 15-5777** |

**DEFENDANTS SPANNING SOURCE, LLC'S,
GEORGE SAAB'S AND CHETAN BHIKHUBHAI PATEL'S RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

Defendants Spanning Source, LLC ("Spanning Source"), George Saab ("Saab") and Chetan Bhikhubhai Patel ("C. Patel") (collectively "Responding Defendants")[1], by and through their undersigned counsel, Sidkoff, Pincus & Green, P.C., respectfully submit this Response in opposition to Plaintiffs', Federal Trade Commission ("FTC"), State of Connecticut and Commonwealth of Pennsylvania, Motion to For Leave to File Amended Complaint for Permanent Injunction and Other Relief, and, in support thereof, state as follows:

---

[1] Counsel for Responding Defendants formerly represented Niraj Patel, who is now represented by Joshua Wolson, Esq.

**I.      BACKGROUND**

    **A.      Pertinent Procedural Background**

The FTC, along with the Attorney General's Offices of Connecticut and Pennsylvania (collectively "Plaintiffs"), brought this action under 15 U.S.C. §§ 53(b) and 57(b), 15 U.S.C. §§ 6101–6108, Conn. Gen. Stat. § 42-110m, and 73 Pa. Con. Stat. § 201-4 in the United States District Court for the Eastern District of Pennsylvania against corporate defendants and individuals. The original Complaint alleged violations of the Federal Trade Commission Act, FTC's Telemarketing Sales Rule ("TSR"), and Pennsylvania and Connecticut unfair trade practices and consumer protection laws; and it sought relief in the form of, *inter alia*, a permanent injunction against Defendants, and disgorgement from all Defendants of sums paid by consumers to the India-based technical support companies named as defendants. Responding Defendants filed an Answer to the Complaint denying Plaintiffs' allegations, and asserted numerous affirmative defenses.[2] On January 13, 2016, the Court entered a Scheduling Order with a discovery deadline of July 1, 2016.

Plaintiffs now move for Leave to file an Amended Complaint to add three additional defendants (Innovazion Research Private Limited, Abhishek Gagneja and Rishi Gagnejas) along with two new counts to the Complaint that allege violations of 16 C.F.R. § 310.3(c) (credit card laundering) and 16 C.F.R. § 310.3(b) (for assisting and facilitating the TSR violations).

    **B.      Responding Defendants Oppose Adding Count V To The**
            **Complaint, Alleging Violations Of 16 C.F.R. § 310.3(c)**

Responding Defendants oppose Plaintiffs' request to add Count V to the Complaint for alleged violations of 16 C.F.R. § 310.3(c), credit card laundering, because that section of the law

---

[2] Plaintiffs filed a Motion to Strike several of Defendants' affirmative defenses to the Complaint and jury demand which is currently pending before the Court.

2

is not intended to address any conduct alleged in the Amended Complaint, and by its terms, has no application in this case. 16 C.F.R. § 310.3(c) provides:

> (c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:
>
> (1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;
> (2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or
> (3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

Simply stated, Plaintiffs have imported into this case a section of the law that was designed to regulate conduct not alleged here; and the proposed amendment injudiciously seeks to throw in the *kitchen sink* to an already prolix and redundant Complaint. As we discuss in detail, credit card laundering involves the practice of accomplishing the illegal transfer of funds under the guise of payment for a legitimate purchase of goods or services that were never actually offered. However, in this case, Plaintiffs concede that the consumers who were allegedly victimized all authorized credit card charges for repair services to their computers; and the wrongdoing allegedly occurred when the services were performed improperly, there was up-selling of unneeded services, or the credentials of the service providers was misrepresented. Indeed, the transactions which form the basis of the Amended Complaint were all initiated by telephone calls made by consumers who wanted repair services performed on their computers. The Amended Complaint and the FTC investigation report filed with the Court allege consumers

initiated all of the requests for services from Defendants, and provided their credit cards as payment for those services.

Surely the FTC is not alleging the consumers were part of a scheme to make disguised payments from their credit cards for phantom services they did not order because the consumers were conspiring with the Defendants to use their credit cards to transfer money for an illicit purpose. That is the kind of wrongdoing 16 C.F.R. § 310.3(c) seeks to curb.  Similarly, Plaintiffs do not allege that Defendants made claims against the consumers' credit cards that were not related to the computer-service transactions. On its face, 16 C.F.R. § 310.3(c) simply does not apply to the transactions alleged by Plaintiffs this case.

Therefore, the proposed amendment would be futile because that part of the Amended Complaint would not survive a motion to dismiss.  Plaintiffs' Motion to Amend seeking to add Count V to the Complaint should be denied.[3]

### C.     Pertinent Factual Background

Responding Defendants will spare the Court a recitation of the numerous facts they dispute in the Amended Complaint, and will not endeavor to tell their side of the story here since this Opposition is narrowly focused on why it would be futile for the Court to allow Plaintiffs to include Count V in the Amended Complaint. It should go without saying that there is no adoptive admission, or any other waiver or change in Responding Defendants' legal position that is intended by not repeating their defenses and allegations here.

---

[3] From a practical standpoint, adding the credit card laundering claim in proposed Count V of the Amended Complaint would not provide a valid new platform for the Plaintiffs to redress Defendants' prior interaction with consumers, but because the notion of credit card laundering is so far from the reality of this case, adding Count V would do nothing but produce confusion, and unproductive complications that might hamper the manageability of the litigation. For example, the inapposite claims of credit card laundering in proposed Count V would enlarge needlessly the issues that would have to be covered in discovery and motion practice.

The Amended Complaint alleges that all Defendants were engaged in a common enterprise that had two "arms", the Processor Defendants (Spanning Source, G. Saab, N. Patel and C. Patel) and the Provider Defendants (Innovazion US, C4S-CT, Bartolotta, along with new Defendants Innovazion India, A. Gagneja, and R. Gagneja). Plaintiffs further allege that the Defendants "apportioned" duties and responsibilities; and Responding Defendants role was to process consumers' credit card payments for services sold and performed by the India-based companies, Click4Support and Innovazion.  <u>However, there is no allegation that Responding Defendants processed credit card transactions that were not authorized by the consumer.</u>[4]

## II. ARGUMENT

### A. The Court Should Deny Plaintiffs' Motion to Amend The Complaint to add Count V's Allegations of Violation of 16 C.F.R. § 310.3(c) for Credit Card Laundering as the Allegations Supporting the Alleged Violation Are Not Credit Card Laundering Under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 et seq. and the Amendment is Therefore Futile

#### 1. The Credit Card Laundering provisions of the Telemarketing and Consumer Fraud and Abuse Prevention Act Do Not Apply to the Facts of this Case Based on the Legislative History and Intent of Congress

Although amendments under Fed. R. Civ. P. 15(a), shall be freely allowed, amendments are not unlimited and can be denied if the proposed amendment would cause undue delay, or demonstrates bad faith or dilatory motive, or if the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *See also Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (1988).  Futility is a recognized ground for denying a proposed amendment to a Complaint where the proposed cause of action suffers from a fatal deficiency as a matter of law.

---

[4] Plaintiffs had served Civil Investigative Demands ("CID's") on TD Bank **prior** to filing this case and in fact, attached a merchant bank application that Responding Defendants submitted to TD Bank in June 2012 to their Motion for a Temporary Restraining Order and Preliminary Injunction.

*See, Vallerey Stylianoudis v. Westinghouse Credit Corp.*, 785 F.Supp. 530, (W.D. Pa. 1992) (motion to amend complaint denied as proposed amendment barred by statute); *See also Glaziers and Glass Workers Union Local No. 252 Annuity Fund, et al v. Janney Montgomery Scott, Inc*, 155 F.R.D. 97, 100 (E.D. Pa. 1994) (motion to amend complaint for fraud denied as futile); *Upper v. U.S. Government*, 1994 WL 660738 (D.N.J. 1994) (motion to amend complaint denied where amendment would be contrary to Congressional intent). The standard of "futility" is whether the proposed amendment would withstand the opposing party's motion to dismiss the claim. *See Jablonski*, 863 F.2d at 292.[5]

In the instant case, there is no allegation that the consumers' credit card statement showed charges for the computer technical services they purchased from any company other than the company from whom the purchased the service from being Click4Support. The proposed Amended Complaint does not allege that charges from Spanning Source, the credit card processor, appeared on consumers' credit card statements, which would be the form of credit card laundering as discussed in the legislative history of 16 C.F.R. § 310.3(c), which was promulgated by the FTC pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 *et seq* ("Act"). A review of what Congress had in mind concerning credit card laundering can be found in a hearing before the House Subcommittee on Transportation and Hazardous Materials Committee on Energy and Commerce which held a hearing on February 17, 1993. At that hearing, Dennis Brosnan testified on behalf of Visa and MasterCard on the meaning of credit card laundering:

---

[5] Although Plaintiffs argue that there would be no prejudice to the Responding Defendants if the Court allowed the amendment, the issue of prejudice is not relevant when the amendment is futile as in this case. *See Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010) (a motion to amend complaint can be denied on the basis of bad faith, prejudice to the non-moving party or futility). Moreover, as noted above, allowing Count V would spawn a whole category of discovery requests and ultimately dispositive motions to avoid having this spurious claim of credit card laundering still in the case at the time of trial.

> Fraudulent operators and brokers engaged in credit card laundering frequently prey on smaller, otherwise legitimate but unsophisticated merchants who have authorized access to the bank card systems. One approach employed by fraudulent operators to lure merchants into participating in laundering schemes involves the fraudulent operator befriending the merchant, indicating that he is new in town, and asking the merchant for his help in submitting sales drafts into the bank card systems until the operator can "establish" a relationship with a local bank. Another approach that we have seen involves the fraudulent operator beginning negotiations for the purchase of the merchant's business and, during the course of the negotiations, asking for help, in submitting sales drafts into the bank card systems until the operator "completes ' the purchase of the business. The purchase is, of course, never consummated.
>
> The fraudulent operator receives funds for the value of the transactions submitted into the bank card systems (often minus a percentage kept by the merchant submit ting the slips as agreed by the merchant and the fraudulent operator) shortly after the transactions are submitted. These funds, and the fraudulent operator, generally are long gone by the time the chargebacks relating to the fraudulent transactions occur. The merchant, who is responsible for the chargebacks, often is left with large obligations to his bank which he cannot cover. Bankruptcy may be his only recourse. Any remaining unfunded chargeback liability is borne by the merchant's bank.
>
> United States. House. Subcommittee on Transportation and Hazardous Materials of the Committee on Energy and Commerce, *The Telemarketing and Consumer Fraud and Abuse Protection Act*. Hearings, Feb. 17, 1993, pp. 46-47, 104th Cong. 1st sess. Washington: GPO, 1993. Print.

Excerpts from this subcommittee hearing are attached hereto as Exhibit "A".

Credit card laundering as described in the legislative history is thus a scheme where a legitimate merchant is tricked by a scammer to process fraudulent credit card transactions that were never for the purchase of goods or services through the legitimate merchant's account. Because the charges on the credit cards were fake, the legitimate merchant gets hit with the chargebacks and must repay his merchant bank. The victim of credit card laundering is not the consumer but rather the innocent merchant who had been duped to process phony credit card charges.

There are no allegations in the proposed Amended Complaint that in any way even remotely resembles credit card laundering as described in the words of 16 C.F.R. § 310.3(c)

7

(quoted above) or as explained in the testimony of the representative of Visa and MasterCard found in the legislative history. Plaintiffs therefore are overreaching by asking this Court to allow an amendment to the Complaint for credit card laundering. Accordingly, the proposed amendment at Count V based on credit card laundering is on its face futile as it cannot withstand a motion to dismiss. *See Glaziers and Glass Workers Union Local No. 252 Annuity Fund*, 155 F.R.D. at 100.

### 2. Spanning Source was a Service Provider Whose Role in Credit Card Transactions in Recognized by the Federal Reserve Bank

Plaintiffs are arguing that Spanning Source's role in the credit card transactions process amounted to credit card laundering. However, the role of Spanning Source as the "gateway" to the merchant banks for the Foreign Defendants was aptly described in *Economic Review*, a quarterly publication of the Federal Reserve Bank of Atlanta. In an article appearing in *Economic Review*, the role of Spanning Source in the credit card industry was described and depicted in the below diagram:



Figure 2
Parties Involved in a Card Program: A Four-Party Network

Ramon P. DeGennaro, *Merchant Acquirers and Payment Card Processor: A Look inside the Black Box,* Economic Review, Federal Reserve Bank of Atlanta, First Quarter, 2006, p. 31.

In the above diagram, Spanning Source is the "**service provider**" or the "gateway" to the merchant bank (merchant acquirer), such as TD Bank and Humboldt Merchant Services.[6] Spanning Source's role in the payment card industry as outlined above provides a function which is clearly contemplated the industry and in fact, the role of service providers are obviously approved by the Federal Reserve Bank, which supervises and regulates banks and other financial institutions.[7] Are Plaintiffs telling the Court that credit card service providers engage in credit card laundering by processing credit card transaction for merchants? Plaintiffs are requesting the Court to add an allegation to the Complaint based on Responding Defendants' role in the credit card industry that is recognized and contemplated by the Federal Reserve Bank as described above. The requested amendment for credit card laundering is neither supported by the facts nor warranted by Responding Defendants' actions here who acted only as a "gateway" to the merchant banks for the Click4Support entities.

### Conclusion

Plaintiff's request to amend the Complaint add a count to the Complaint for credit card laundering would not survive a motion to dismiss, and is therefore futile. Therefore, Plaintiffs' Motion to Amend the Complaint to add allegations and Count V to the Complaint for credit card laundering pursuant to 16 C.F.R. § 310.3(c) as to the Responding Defendants should be denied.

---

[6] N.T. 11/9/15, at 183

[7] https://www.federalreserve.gov/faqs/about_12594.htm

|  |  |
|---|---|
|  | **SIDKOFF, PINCUS & GREEN, P.C.** |
|  | /s/ Gary Green |
|  | Gary Green, Esquire |
|  | Larry M. Keller, Esquire |
|  | Samantha Green, Esquire |
|  | Colleen Rusbarsky, Esquire |
|  | 1101 Market Street, Ste. 2700 |
|  | Philadelphia, PA 19107 |
|  | (215) 574-0600 (office) |
|  | (215) 574-0310 (fax) |
|  | ggreen@greatlawyers.com |
|  | lmk@sidkoffpincusgreen.com |
|  | sgreen@sidkoffpincusgreen.com |
|  | crusbarsky@sidkoffpincusgreen.com |
|  |  |
| DATED: April 6, 2016 | Attorneys for Defendants Spanning Source, LLC, George Saab and Chetan Bhikhubhai Patel |

# EXHIBIT A

# CONSUMER PROTECTION TELEMARKETING

## HEARING

BEFORE THE

### SUBCOMMITTEE ON TRANSPORTATION AND HAZARDOUS MATERIALS

OF THE

## COMMITTEE ON ENERGY AND COMMERCE HOUSE OF REPRESENTATIVES

ONE HUNDRED THIRD CONGRESS

FIRST SESSION

ON

### H.R. 868

BILL TO STRENGTHEN THE AUTHORITY OF THE FEDERAL TRADE ƆMMISSION TO PROTECT CONSUMERS IN CONNECTION WITH SALES ADE WITH A TELEPHONE, AND FOR OTHER PURPOSES

FEBRUARY 17, 1993

### Serial No. 103-3

Printed for the use of the Committee on Energy and Commerce



U.S. GOVERNMENT PRINTING OFFICE
66-957≠                    WASHINGTON : 1993

For sale by the U.S. Government Printing Office
Superintendent of Documents, Congressional Sales Office, Washington, DC 20402
ISBN 0-16-040741-9

H103
.01

## COMMITTEE ON ENERGY AND COMMERCE

JOHN D. DINGELL, Michigan, *Chairman*

HENRY A. WAXMAN, California
PHILIP R. SHARP, Indiana
EDWARD J. MARKEY, Massachusetts
AL SWIFT, Washington
CARDISS COLLINS, Illinois
MIKE SYNAR, Oklahoma
W.J. "BILLY" TAUZIN, Louisiana
RON WYDEN, Oregon
RALPH M. HALL, Texas
BILL RICHARDSON, New Mexico
JIM SLATTERY, Kansas
JOHN BRYANT, Texas
RICK BOUCHER, Virginia
JIM COOPER, Tennessee
J. ROY ROWLAND, Georgia
THOMAS J. MANTON, New York
EDOLPHUS TOWNS, New York
GERRY E. STUDDS, Massachusetts
RICHARD H. LEHMAN, California
FRANK PALLONE, JR., New Jersey
CRAIG A. WASHINGTON, Texas
LYNN SCHENK, California
SHERROD BROWN, Ohio
MIKE KREIDLER, Washington
MARJORIE MARGOLIES-MEZVINSKY, Pennsylvania
BLANCHE M. LAMBERT, Arkansas

CARLOS J. MOORHEAD, California
THOMAS J. BLILEY, JR., Virginia
JACK FIELDS, Texas
MICHAEL G. OXLEY, Ohio
MICHAEL BILIRAKIS, Florida
DAN SCHAEFER, Colorado
JOE BARTON, Texas
ALEX McMILLAN, North Carolina
J. DENNIS HASTERT, Illinois
FRED UPTON, Michigan
CLIFF STEARNS, Florida
BILL PAXON, New York
PAUL E. GILLMOR, Ohio
SCOTT KLUG, Wisconsin
GARY A. FRANKS, Connecticut
JAMES C. GREENWOOD, Pennsylvania
MICHAEL D. CRAPO, Idaho

ALAN J. ROTH, *Staff Director and Chief Counsel*
DENNIS B. FITZGIBBONS, *Deputy Staff Director*
MARGARET A. DURBIN, *Minority Chief Counsel and Staff Director*

---

### SUBCOMMITTEE ON TRANSPORTATION AND HAZARDOUS MATERIALS

AL SWIFT, Washington, *Chairman*

BLANCHE M. LAMBERT, Arkansas
W.J. "BILLY" TAUZIN, Louisiana
RICK BOUCHER, Virginia
J. ROY ROWLAND, Georgia
THOMAS J. MANTON, New York
GERRY E. STUDDS, Massachusetts
FRANK PALLONE, JR., New Jersey
LYNN SCHENK, California
PHILIP R. SHARP, Indiana
EDWARD J. MARKEY, Massachusetts
BILL RICHARDSON, New Mexico
JOHN D. DINGELL, Michigan
  (Ex Officio)

MICHAEL G. OXLEY, Ohio
JACK FIELDS, Texas
DAN SCHAEFER, Colorado
FRED UPTON, Michigan
BILL PAXON, New York
PAUL E. GILLMOR, Ohio
MICHAEL D. CRAPO, Idaho
CARLOS J. MOORHEAD, California
  (Ex Officio)

ARTHUR P. ENDRES, JR., *Staff Director/Chief Counsel*
SCOTT COOPER, *Special Assistant*
H. GLENN SCAMMEL, *Minority Counsel*

(II)

46

Act in 1984, and that the law enforcement agencies have sufficient resources to investigate and prosecute fraudulent telemarketers. In this regard, VISA and MasterCard actively worked toward the enactment of much-needed improvements to the Credit Card Fraud Act which were included in the Crime Bills which passed both the Senate and the House in the last Congress.

VISA and MasterCard also are continuing to educate their member financial institutions, merchants and consumers about fraudulent telemarketing practices. For example, MasterCard and VISA have sent several formal communications to their member financial institutions concerning the problem of telemarketing fraud, have conducted fraud seminars for member financial institutions and law enforcement officials and have prepared "statement stuffers" for members to distribute to cardholders warning of the dangers posed by telemarketing fraud.

In addition, MasterCard and VISA have bolstered their procedures to identify businesses engaged in fraudulent practices, including telemarketing fraud, and to deny them access to the VISA and MasterCard credit card payment systems. In this regard, MasterCard and VISA require member financial institutions to investigate merchants applying for entry into the VISA and MasterCard payment systems. Pursuant to these merchant investigation requirements, several procedures must be performed by MasterCard and VISA member financial institutions before a merchant can be licensed to accept VISA or MasterCard credit cards. At a minimum, before accepting a merchant, a member financial institution must: (1) conduct a credit check and/or other financial background investigation on the merchant; (2) physically inspect the merchant's place of business; and (3) analyze the MasterCard or VISA databases to determine if the merchant has been previously terminated for fraud or suspected fraud.

Though seemingly straightforward, these screening procedures must be implemented very carefully in order to protect the legitimate interests of honest merchants. As a result, member financial institutions are required to engage in a delicate balance: on the one hand the member institution must attempt to protect the integrity of the bank card system by denying access to dishonest merchants, while on the other hand the member institution must be cautious so as not to exclude or unduly hinder the activities of legitimate businesses that often rely heavily on the bank card payment systems. This balancing process is particularly difficult when the applicant is a new business with no performance record against which its trustworthiness can be measured.

VISA and MasterCard also independently monitor the merchants' chargeback activity, and require member institutions to investigate and address problems if chargeback levels at a particular merchant are abnormal. Also, member institutions are subject to fines or penalties if the chargebacks of their merchant accounts exceed a reasonable level. Ultimately, MasterCard and VISA, acting independently, have the authority to expel from participation in their respective bank card systems a merchant that has demonstrated a pattern of abuse of the system or that has engaged in confirmed fraud. Hundreds of telemarketers have been expelled for these reasons to date.

Notwithstanding the efforts of VISA, MasterCard, and their member financial institutions, fraudulent telemarketers and other fraudulent operators have continued to gain access to the credit card systems, often by engaging in "credit card laundering." Credit card laundering is the attempt to deceive a member financial institution by a merchant with access to the bank card system submitting for payment bank card transactions that are not his own. Such activity is a violation of the contract between the merchant and the member institution as well as a violation of the bank card systems' rules. Laundering is sometimes perpetrated by third-party intermediaries acting as brokers, who persuade valid merchants with access to the bank card systems to submit, in their own name, the fraudulent telemarketers' sales drafts into the bank card systems. This practice enables the fraudulent telemarketer and others engaged in fraud to circumvent the safeguards that the bank card systems and the financial institutions participating in these systems have established to preclude access by the fraudulent operators.

Fraudulent operators and brokers engaged in credit card laundering frequently prey on smaller, otherwise legitimate but unsophisticated merchants who have authorized access to the bank card systems. One approach employed by fraudulent operators to lure merchants into participating in laundering schemes involves the fraudulent operator befriending the merchant, indicating that he is new in town, and asking the merchant for his help in submitting sales drafts into the bank card systems until the operator can "establish" a relationship with a local bank. Another approach that we have seen involves the fraudulent operator beginning negotiations for the purchase of the merchant's business and, during the course of the negotia-

tions, asking for help in submitting sales drafts into the bank card systems until the operator "completes" the purchase of the business. The purchase is, of course, never consummated.

The fraudulent operator receives funds for the value of the transactions submitted into the bank card systems (often minus a percentage kept by the merchant submitting the slips as agreed by the merchant and the fraudulent operator) shortly after the transactions are submitted. These funds, and the fraudulent operator, generally are long gone by the time the chargebacks relating to the fraudulent transactions occur. The merchant, who is responsible for the chargebacks, often is left with large obligations to his bank which he cannot cover. Bankruptcy may be his only recourse. Any remaining unfunded chargeback liability is borne by the merchant's bank.

MasterCard and VISA believe that telemarketing fraud losses will continue to mount without an effective Federal legislative response to this national problem. State and local enforcement agencies, often with the assistance of VISA, MasterCard or their member institutions, have initiated actions against fraudulent telemarketers only to be frustrated by State law jurisdictional limits. These jurisdictional limits make it difficult to prosecute or obtain relief from fraudulent telemarketers who locate their operations outside the States in which their victims are located or move frequently to avoid detection and prosecution under State law. In addition, although MasterCard and VISA are working closely with Federal and State law enforcement agencies to ensure that the maximum possible resources are devoted to addressing telemarketing fraud, fraudulent telemarketing schemes are too numerous and too widespread to be controlled by the enforcement agencies alone, given their priorities and resources.

VISA and MasterCard believe Federal civil telemarketing fraud legislation must include three key elements: (1) a requirement that the FTC develop rules defining fraudulent telemarketing activities; (2) the creation of a private right of action to permit victims of these frauds to take action against fraudulent telemarketers; and (3) an express grant of authority to the State attorneys general and other appropriate State authorities to bring enforcement actions directly in Federal court. We applaud the sponsors of the Telemarketing Act for including each of these three critical elements in the Act.

MasterCard and VISA believe that the FTC rules defining fraudulent telemarketing activities which would be required by the Telemarketing Act would be invaluable. Aggressive action today is sometimes impeded by uncertainty as to whether the particular conduct in question constitutes telemarketing fraud or merely sharp business practice. As provided in the Telemarketing Act, the specifics of these rules should be left to the FTC, as the expert Federal agency in this area, to develop and amend over time as telemarketing fraud evolves.

MasterCard and VISA believe that any Federal legislation regarding telemarketing fraud should expressly prohibit credit card laundering, and recommend that the Telemarketing Act be amended accordingly. As discussed above, credit card laundering is the attempt to deceive a member financial institution by a merchant with access to the bank card system submitting for payment bank card transactions that are not his own. Such activity is a violation of the contract between the merchant and the member institution as well as a violation of the bank card systems' rules.

The bank card associations believe that if their member financial institutions know with whom they are dealing, they will be able to effectively preclude fraudulent telemarketers from the VISA and MasterCard credit card systems, through the prophylactic procedures discussed above. However, these procedures can be circumvented where the member financial institution acquiror is not aware that it is dealing with a fraudulent telemarketer because the telemarketer's sales are entering the system through laundering schemes.

Accordingly, MasterCard and VISA strongly support the inclusion in the Telemarketing Act of an express prohibition of credit card laundering. Specifically, this legislation should provide that credit card laundering involving telemarketers per se constitutes a fraudulent activity. Credit card laundering should be defined broadly, so that it applies to the fraudulent telemarketer, any broker, and the merchant participating in the credit card laundering scheme. VISA and MasterCard believe that these provisions would be among the most useful in combatting telemarketing fraud.

VISA and MasterCard believe that the creation of a private right of action is an essential element of any effective Federal civil response to telemarketing fraud. A private right of action would permit those who are in the best position to first detect telemarketing fraud—the victims, which include financial institutions—to act quickly to stop fraudulent operations as soon as they are discovered. A private right of

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** : | |
| : | |
| **STATE OF CONNECTICUT,** : | |
| **OFFICE OF ATTORNEY GENERAL, and** : | |
| : | |
| **COMMONWEALTH OF PENNSYLVANIA,** : | **CIVIL ACTION NO. 15-5777** |
| **OFFICE OF ATTORNEY GENERAL,** : | |
| **Plaintiffs,** : | |
| v. : | |
| : | |
| **CLICK4SUPPORT, LLC,** : | |
| **a Connecticut Limited Liability Company,** *et al.* : | |
| **Defendants.** : | |

## CERTIFICATE OF SERVICE

I, Larry M. Keller, hereby certify that the *Defendants Spanning Source, LLC's, George Saab's and Chetan Bhikhubhai Patel's Response in Opposition to Plaintiff's Motion for Leave to File Amended Complaint for Permanent Injunction and Other Relief* was served via the ECF system upon the following counsel:

Fil M. De Banate, Esquire
Christopher D. Panek, Esquire
Nicole J. Guinte, Esquire
FEDERAL TRADE COMMISSION
1111 Superior Avenue East, Suite 200
Cleveland, OH  44114
fdebanate@ftc.gov
cpanek@ftc.gov
nguinto@ftc.gov
*Attorney for Plaintiffs Federal Trade Commission*

Kevin Dooley Kent, Esquire
Conrad O'Brien, P.C.
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA  19102-2100
phamill@conradobrien.com
kkent@conradobrien.com
agallinaro@conradobrien.com
*Attorney for Receiver*

Sandra G. Arenas, Esquire
OFFICE OF CONNECTICUT ATTORNEY GENERAL
110 Sherman Street
Hartford, CT  06105
sandra.arenas@ct.gov
*Attorney for Plaintiffs State of Connecticut*

Nicole R. Ditomo, Esquire
DEPUTY ATTORNEY GENERAL BUREAU OF CONSUMER PROTECTION
15th Floor, Strawberry Square
Harrisburg, PA  17120
nditomo@attorneygeneral.gov
*Attorney for Plaintiffs Commonwealth of Pennsylvania and Office of Attorney General*

Joshua D. Wolson, Esquire
Dilworth Paxon LLP
1500 Market Street, Suite 3500E
Philadelphia, PA  19102
jwolson@dilworthlaw.com
*Attorney for Niraj Patel*

**SIDKOFF, PINCUS & GREEN, P.C.**

/s/ Larry M. Keller
Larry M. Keller, Esquire
1101 Market Street, Suite 2700
Philadelphia, PA 19107
(215) 574-0600 (office)
(215) 574-0310 (fax)
sgreen@sidkoffpincusgreen.com

Attorneys for Defendants Spanning Source, LLC, George Saab and Chetan Bhikhubhai Patel

DATED:  April 6, 2016